UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


RICKI KIMBREL,

        Plaintiff,                                   Hon. Janet T. Neff

v.                                                Case No. 1:08 CV 1081

PATRICIA CARUSO, et al.,

        Defendants.
_____/


## REPORT AND RECOMMENDATION

This matter is before the Court on <u>Defendants' Motion for Summary Judgment</u>, (dkt. #19), and <u>Plaintiff's Motion for Temporary Restraining Order</u>, (dkt. #29). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants' motion be **granted**, Plaintiff's motion **denied**, and Plaintiff's action **dismissed**.


## BACKGROUND

Plaintiff initiated the present action on November 19, 2008, against the following individuals: Patricia Caruso, Blaine Lafler, Anthony Trierweiler, and Matthew Wagner. (Dkt. #1). The following allegations are contained in Plaintiff's amended complaint. (Dkt. #4). Plaintiff is a member of the Jewish faith and as such has been granted permission to participate in the Kosher meal plan. Plaintiff also suffers from gastroesophageal reflux disease (GERD), for which he has been "granted a special accommodation." Certain items on the Kosher menu, however, aggravate Plaintiff's GERD.

When Plaintiff requested that he be provided "a menu which was both Kosher and GERD-compatible," he was informed that such was not available. In response, Plaintiff requested to be transferred to a different facility that would accommodate his need for a GERD-compatible Kosher diet. Defendants refused his transfer requests. Plaintiff asserts that as a result he "has suffered a substantial burden upon his religious exercise by being forced to eat Kosher foods which inflame his GERD and cause him physical injury, pain, and suffering." Plaintiff asserts that the failure by Defendants to provide him with a GERD-compatible Kosher diet constitutes a violation of his rights under the First and Eighth Amendment rights, as well as his rights under the Religious Land Use and Institutionalized Persons Act (RLUIPA). Defendants Caruso, Lafler, and Trierweiler now move for summary judgment. Plaintiff has not yet effected service on Defendant Wagner. Plaintiff also moves for a temporary restraining order and permanent injunction ordering Defendants to provide Plaintiff with a GERD-compatible Kosher diet.

## **SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005); *see also*, *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The fact that the evidence may be controlled or possessed by the moving party does not change the non-moving party's burden "to

show sufficient evidence from which a jury could reasonably find in her favor, again, so long as she has had a full opportunity to conduct discovery." *Minadeo*, 398 F.3d at 761 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)).

Once the moving party has met its burden of production, the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini*, 440 F.3d at 357 (citing *Anderson*, 477 U.S. at 247-48; *Celotex Corp. v. Catrett*, 477 U.S. at 324). While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006) (citations omitted).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to

establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, *see Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *Minadeo*, 398 F.3d at 761, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## ANALYSIS

**I.        Exhaustion**

Defendants assert that Plaintiff's claims must be dismissed because Plaintiff has failed to properly exhaust his administrative remedies. The undersigned agrees.

Pursuant to 42 U.S.C. § 1997e(a), a prisoner asserting an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust all available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002). Prisoners are no longer required to demonstrate exhaustion in their complaints. *See Jones v. Bock*, 549 U.S. 199, 216 (2007). Instead, failure to exhaust administrative remedies is "an affirmative defense under the PLRA" which the defendant bears the burden of establishing. *Id.* With respect to what constitutes proper exhaustion, the Supreme Court has stated that "the PLRA exhaustion requirement requires proper exhaustion" defined as "compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90-93 (2006). In *Bock*, the Court reiterated that

> Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

*Bock*, 549 U.S. at 218.

When assessing whether a prisoner has properly exhausted his claims as required by the PLRA, it is appropriate to seek guidance from the substantively similar exhaustion rules applicable to petitions for writ of habeas corpus. *See Woodford,* 548 U.S. at 88. In the habeas context, a petitioner is required to properly present his federal claims through one complete round of the State's established appellate review process. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 845 (1999). To "'protect the

integrity' of the federal exhaustion rule, we ask not only whether a prisoner has exhausted his state remedies, but also whether he has *properly* exhausted those remedies." *Id.* at 848 (citation omitted). The Supreme Court has stated that in the habeas context, "the sanction for failing to exhaust properly (preclusion of federal review) is called procedural default." *Woodford,* 548 U.S. at 92. To determine whether a habeas petitioner procedurally defaulted a federal claim in state court, the Court must consider whether: (1) the petitioner failed to comply with an applicable state procedural rule; (2) the last state court rendering judgment on the claim at issue actually enforced the state procedural rule so as to bar that claim; and (3) the state procedural default is an "independent and adequate" state ground properly foreclosing federal habeas review of the federal constitutional claim. *See Hicks v. Straub,* 377 F.3d 538, 551 (6th Cir.2004), *cert. denied,* 544 U.S. 928 (2005); *accord Lancaster v. Adams,* 324 F.3d 423, 436-37 (6th Cir.2003).

Under the procedural default component of § 1997e(a), a prisoner's claims are procedurally defaulted if he fails to complete the administrative review process in accordance with the deadlines and other applicable procedural rules and prison officials actually relied upon the procedural rule to bar review of the grievance. *See Johnson v. Meadows,* 418 F.3d 1152, 1159 (11th Cir.2005), *cert. denied,* 126 S.Ct. 2978 (2006); *Spruill v. Gillis,* 372 F.3d 218, 222 (3rd Cir.2004) (holding that "the determination whether a prisoner has 'properly' exhausted a claim (for procedural default purposes) is made by evaluating the prisoner's compliance with the prison's administrative regulations"). Moreover, just as procedural default in the federal habeas corpus context must be predicated on an adequate and independent state ground, the procedural requirements of a prison grievance system may not be imposed in a way that offends the United States Constitution or the intended purposes of § 1997e(a). *See Spruill,* 372 F.3d at 232.

Michigan Department of Corrections Policy Directive 03.02.130 (effective July 9, 2007) articulates the applicable grievance procedures for prisoners in MDOC custody. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue. *Id.* at ¶ P. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ P-Q. The policy provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places, and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R. The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶¶ W-X.

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II within ten business days of the response, or if no response was received, within ten business days after the response was due. *Id.* at ¶ BB. The respondent at Step II is designated by policy, *e.g.,* the regional health administrator for grievances concerning health care issues. *Id.* at ¶ DD. If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III. *Id.* at ¶ FF. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* The Grievance and Appeals Section is the respondent for Step III grievances. *Id.* at ¶ GG. The total grievance process from the filing of the Step I grievance to providing a response at Step III "shall generally be completed within 120 calendar days unless an extension has been approved in writing by the Grievance Coordinator at Step I and/or Step II." *Id.* at ¶ S.

A.      Grievance DRF-07-10-01059-12i

Plaintiff filed this grievance on October 22, 2007, alleging that "food service" and "health service" failed to provide him with a GERD-compatible Kosher diet. (Dkt. #20, Exhibit B). This grievance was denied at steps I and II. Plaintiff did not appeal this grievance to step III, a matter which Plaintiff does not dispute.

B.      Grievance DRF-08-01-00119-28A

Plaintiff filed this grievance on January 22, 2008, alleging that the "chaplain"[1] "refused to help" him in his efforts to obtain a GERD-compatible Kosher diet. (Dkt. #20, Exhibit D). This grievance was rejected as duplicative of grievance DRF-07-10-01059-12i.

C.      Grievance DRF-08-04-00436-28A

Plaintiff filed this grievance on April 27, 2008, alleging that Defendants Caruso and Lafler failed to provide him with a GERD-compatible Kosher diet. (Dkt. #20, Exhibit E). This grievance was rejected as duplicative of grievance DRF-07-10-01059-12i.

D.      Grievance DRF-08-08-00775-28i

Plaintiff filed this grievance on August 5, 2008, alleging that Defendant Wagner discontinued his GERD-related therapeutic diet. (Dkt. #20, Exhibit F). This grievance was rejected because Plaintiff filed this grievance without first attempting to resolve the matter with health services as required by MDOC policy.

---

[1] Plaintiff does not identify this "chaplain" by name. None of the Defendants in this matter are identified in Plaintiff's pleadings as a chaplain.

E.     Modified Grievance Access

Subsequent to filing the aforementioned grievances, Plaintiff was placed on modified grievance access status for a 90 day period beginning on August 12, 2008. (Dkt. #27, Exhibit D). While on such status, Plaintiff was required to obtain staff approval before filing a step I grievance. Plaintiff asserts that during his time on modified grievance access status, he requested permission (on several occasions) to file a grievance concerning his inability to obtain a GERD-compatible Kosher diet. These requests were all denied, thereby preventing Plaintiff from filing a grievance. Plaintiff asserts that because his requests to file a grievance were denied, he cannot be held to have failed to avail himself of the grievance process.

Plaintiff is correct that prisoners are only required to exhaust those administrative remedies that are "available." *See* 42 U.S.C. § 1997e(a). However, an administrative remedy is not "unavailable" if the prisoner is prevented from utilizing such because of his failure to comply with the relevant policies and procedural requirements. The grievance requests Plaintiff submitted while on modified access status were denied because Plaintiff was again attempting to grieve the same issue as that asserted in the aforementioned grievances (i.e., Plaintiff's requests to file a grievance were rejected as duplicative of the issues raised in grievance DRF-07-10-01059-12i). In other words, the grievance process was "available" to Plaintiff, but because he failed to comply with the relevant policies and procedural requirements his attempt to grieve the issue in question was rejected, just as the three grievances discussed above were rejected for failure to comply with the relevant policies and procedural requirements.

In sum, for the reasons articulated herein, the undersigned concludes that Plaintiff has failed to properly exhaust any of the claims asserted in his amended complaint. Accordingly, the

undersigned recommends that Plaintiff's claims be dismissed for failure to properly exhaust administrative remedies. In the alternative, the undersigned recommends, as discussed below, that Defendants Caruso, Lafler, and Trierweiler are entitled to summary judgment as to Plaintiff's claims.

**II.      Eighth Amendment Claims**

Plaintiff asserts that to comply with the requirements of his faith, he was forced to eat Kosher foods that aggravated his GERD. Plaintiff asserts that this constitutes a violation of his Eighth Amendment right to be free from cruel and unusual punishment.

The Eighth Amendment's prohibition against cruel and unusual punishment applies not only to punishment imposed by the state, but also to deprivations which occur during imprisonment and are not part of the sentence imposed. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The analysis by which Defendants' conduct is evaluated consists of two-steps. First, the Court must determine, objectively, whether the alleged deprivation was sufficiently serious. In this respect, Plaintiff "must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834.

With respect to the objective prong of the analysis, contemporary standards of decency determine whether conditions of confinement are cruel and unusual. *See Hadix v. Johnson*, 367 F.3d 513, 525 (6th Cir. 2004) (citing *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981)). Contemporary standards of decency are violated only by "extreme deprivations" which deprive the prisoner of the "minimal civilized measure of life's necessities." *Hadix*, 367 F.3d at 525 (quoting *Hudson v. McMillan*, 503 U.S. 1, 9 (1992)). If the objective test is met, the Court must then determine whether Defendants acted with a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834. In other words, was the

individual deliberately indifferent to inmate health or safety. *Id.* However, the Eighth Amendment is not implicated where prison officials simply acted with negligence. *See Perez v. Oakland County*, 466 F.3d 416, 423 (6th Cir. 2006) (citing *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976)). In sum, to establish that Defendants acted with deliberate indifference, Plaintiff must "present evidence from which a trier of fact could conclude 'that the official was subjectively aware of the risk' and 'disregard[ed] that risk by failing to take reasonable measures to abate it.'" *Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004) (quoting *Farmer*, 511 U.S. at 829, 847).

Defendants have submitted copies of Plaintiff's medical records. (Dkt. #20, Exhibit A). On October 30, 2007, Registered Dietician, Patricia Willard responded to Plaintiff's dietary complaints. Willard noted that over the previous two months Plaintiff had purchased from the prison store, e.g., $277.32 worth of food and beverage items "that are known irritants to GERD." Plaintiff has submitted an affidavit in which he acknowledges eating many of these items. (Dkt. #27, Exhibit A). Willard noted that if Plaintiff "followed dietary, tobacco, and caffeine recommendations from [health care] staff over the years, I suspect that he would not be overweight, not have GI distress, not have elevated serum cholesterol, and not have elevated uric acids." (Dkt. #20, Exhibit A). Willard concluded that Plaintiff "appears to be manipulating to obtain secondary gains" and that his "Kosher diet continues to be appropriate as served."

Plaintiff can hardly fault prison officials for serving him foods that allegedly irritate his GERD, when Plaintiff himself purchases and voluntarily consumes such items. The evidence submitted by Defendants reveals that Plaintiff was not subjected to "conditions posing a substantial risk of serious harm." Thus, Plaintiff cannot satisfy the objective prong of the inquiry. Furthermore, in light of Willard's conclusion that Plaintiff's kosher diet was "appropriate as served," Plaintiff cannot establish

that Defendants were deliberately indifferent to Plaintiff's health or safety for failing to deviate from a diet that health officials characterized as "appropriate." In sum, the evidence reveals that the deprivation about which Plaintiff complains (not receiving a GERD-compatible Kosher diet) simply fails to implicate the Eighth Amendment. Accordingly, the undersigned recommends that Defendants are entitled to summary judgment as to Plaintiff's Eighth Amendment claims.

### III.     RLUIPA Claims

Plaintiff asserts that Defendants' failure to provide him with a GERD-compatible Kosher diet violated his right to freely exercise his religion as protected by RLUIPA.

In relevant part, RLUIPA prohibits any government from imposing a "substantial burden on the religious exercise" of a prisoner, unless such burden constitutes the least restrictive means of furthering a compelling governmental interest. 42 U.S.C. § 2000cc-1(a). RLUIPA does not define the phrase "substantial burden." Nonetheless, courts have concluded that a "burden" on religious exercise is "substantial" only where such imposes "a significantly great restriction or onus upon such exercise" which "directly coerces the religious adherent to conform his or her behavior accordingly." *Sanders v. Ryan*, 484 F.Supp.2d 1028, 1034 (D. Ariz. 2007) (quoting *Warsoldier v. Woodford*, 418 F.3d 989, 995 (9th Cir. 2005)); *Konikov v. Orange County, Florida*, 410 F.3d 1317, 1323 (11th Cir. 2005).

To come within the scope of RLUIPA the burden in question must render religious exercise "effectively impracticable." *Marshall v. Frank*, 2007 WL 1556872 at *5 (W.D. Wis., May 24, 2007) (quoting *Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 761 (7th Cir. 2003)); *see also*, *Cutter v. Wilkinson*, 544 U.S. 709, 720 (2005) (recognizing that RLUIPA's institutionalized persons provision was intended to alleviate only "exceptional" burdens on religious

exercise). Moreover, a burden is less than "substantial" where it imposes merely an "inconvenience on religious exercise." *See, e.g., Konikov*, 410 F.3d at 1323. These conclusions recognize that RLUIPA was not intended to create a cause of action in response to every decision which serves to inhibit or constrain religious exercise, as such would render meaningless the word "substantial." *See Civil Liberties for Urban Believers*, 342 F.3d at 761.

Plaintiff bears the burden to establish that his ability to exercise his religion has been substantially burdened. *See Kaufman v. Schneiter*, 474 F.Supp.2d 1014, 1025 (W.D. Wis. 2007). The Court notes that Plaintiff does not allege that his request to receive Kosher meals was denied, but instead that his Kosher meals aggravated his GERD. In light of the evidence that Plaintiff voluntarily consumed foods and beverages "that are known irritants to GERD," the Court finds that Plaintiff's ability to practice his religion was not substantially burdened. Accordingly, the undersigned recommends that Defendants are entitled to summary judgment as to Plaintiff's RLUIPA claims.

**IV.        First Amendment Claims**

To establish that his right to freely practice his religion has been violated, Plaintiff must establish that: (1) the belief or practice he seeks to protect is religious within his own "scheme of things," (2) that his belief is sincerely held, and (3) the Defendant's behavior infringes upon this practice or belief. *Kent v. Johnson*, 821 F.2d 1220, 1224-25 (6th Cir. 1987); *see also*, *Bakr v. Johnson*, 1997 WL 428903 at *2 (6th Cir., July 30, 1997) ("sincerely held religious beliefs require accommodation by prison officials"); *Barhite v. Caruso*, 2009 WL 440682 at *2 (W.D. Mich., Feb. 23, 2009).

For the reasons articulated in the preceding section, the Court finds that Defendants' alleged failure to provide Plaintiff with a GERD-compatible Kosher diet did not infringe upon Plaintiff's

religious practices or beliefs and, therefore, did not deprive Plaintiff of his First Amendment right to freely practice his religion. Accordingly, the undersigned recommends that Defendants are entitled to summary judgment as to Plaintiff's First Amendment claims.

## V.     Defendant Wagner

Plaintiff initiated this action on November 19, 2008. On January 13, 2009, the Court ordered that service be effected on all defendants, including Defendant Wagner. The summons and complaint addressed to Defendant Wagner was returned unexecuted in February 2009. In the more than nine (9) months since, Plaintiff has never requested an extension of time to effect service on Defendant Wagner or otherwise requested the Court's assistance in effecting service on Defendant Wagner.

Federal Rule of Civil Procedure 4(c) indicates that "[a] summons must be served together with a copy of the complaint." The time frame within which service must be effected is articulated in Rule 4(m), which provides that if service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, "the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant." If the plaintiff demonstrates good cause for such failure, however, "the court shall extend the time for service for an appropriate period." Fed. R. Civ. P. 4(m); *see also*, *Bush v. City of Zeeland*, 2003 WL 22097837 at *2 (6th Cir., Sep. 5, 2003) (citation omitted). Considering Plaintiff's lack of diligence, the Court recommends that Plaintiff's claims against Defendant Wagner be dismissed without prejudice for failure to timely effect service.

## VI.     Temporary Restraining Order and Preliminary Injunction

Plaintiff moves the Court for injunctive relief ordering Defendants to provide him with a GERD-compatible Kosher diet.

To obtain injunctive relief, Plaintiff must first show that he "is being threatened by some injury for which he has no adequate legal remedy." *Dana Corp. v. Celotex Asbestos Settlement Trust*, 251 F.3d 1107, 1118 (6th Cir. 2001) (citations omitted). If such is the case, the court must then examine several factors: (1) whether the movant is likely to prevail on the merits, (2) whether the movant would suffer irreparable injury if the court does not grant the injunction, (3) whether a preliminary injunction would cause substantial harm to others, and (4) whether a preliminary injunction would be in the public interest. *See Samuel v. Herrick Memorial Hospital*, 201 F.3d 830, 833 (6th Cir. 2000).

Rather than prerequisites which must each be satisfied, the relevant factors, none of which are alone determinative of the matter, are competing considerations to be weighed and balanced. *See Six Clinics Holding Corp., II v. Cafcomp Systems, Inc.*, 119 F.3d 393, 400 (6th Cir. 1997); *Michigan Bell Telephone Co. v. MFS Intelenet of Michigan, Inc.*, 16 F.Supp.2d 828, 831 (W.D.Mich. 1998). Ultimately, the decision whether to grant injunctive relief lies within the court's discretion. *See Dana Corp.*, 251 F.3d at 1118 (the "most significant single component" in the decision whether to grant injunctive relief "is the court's discretion") (citations omitted).

An examination of the relevant factors leads the Court to conclude that injunctive relief is not warranted. For the reasons discussed above, Plaintiff is not likely to prevail on the merits. There is no evidence that Plaintiff will suffer irreparable injury in the absence of injunctive relief. The Court further finds that granting the requested relief is not in the public's interest, as it would require this Court to attempt to manage the day-to-day operations of an MDOC facility, something this Court is simply not equipped to accomplish.

## CONCLUSION

For the reasons articulated herein, the undersigned recommends that <u>Defendants' Motion for Summary Judgment</u>, (dkt. #19), be **granted**; Plaintiff's claims against Defendant Wagner be **dismissed without prejudice**; and Plaintiff's action **dismissed**.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Date: February 2, 2010                     /s/ Ellen S. Carmody
                                           ELLEN S. CARMODY
                                           United States Magistrate Judge